IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CHARLES COX, | : | |
| Plaintiff, | : | |
| | | Case No. 3:14cv00023 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I.     Introduction

Plaintiff Charles Cox sought financial assistance from the Social Security Administration by applying for Disability Insurance Benefits ("DIB") in October 2010, alleging disability since September 8, 2010. (*PageID##* 131-38). He claims disability due to arthritis in entire body; anxiety; cataracts and glaucoma; severe hearing loss in both ears; polio as a child; depression; and "right leg is shorter than left leg." (*PageID##* 205).

After various administrative proceedings, Administrative Law Judge ("ALJ") Thomas R. McNichols II denied Plaintiff's DIB application based on his conclusion that

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security Act. (*PageID##* 42-56). The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. § 405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #10), the Commissioner's Response in Opposition (Doc. #14), Plaintiff's Reply (Doc. #16), the administrative record (Docs. ## 6, 7), and the record as a whole.

## II.     Background

### A.     Plaintiff's Vocational Profile and Testimony

Plaintiff was 47 years old on the alleged disability onset date and is thus considered to be a "younger individual" for purposes of resolving his DIB claim. *See* 20 C.F.R. § 404.1563(c); *see also PageID#* 54. Plaintiff completed the 11th grade and has a "limited" education. (*PageID#* 55). Plaintiff has past relevant work experience as a store laborer, forklift operator, welder, and mixer operator. (*PageID#* 44).

Plaintiff testified at the administrative hearing held on June 12, 2012 that he is 5' 7" tall and weighs approximately 210 pounds. (*PageID#* 65). Plaintiff testified he lives with his wife, two daughters, and son. (*Id.*). He has a driver's license but testified he drives "less frequently," due to problems with his eyes and feeling dizzy. (*PageID#* 65-66). He drove himself to the hearing because there was "[n]obody else to bring me." (*PageID#* 66). Plaintiff testified he can only read at the 8th grade level. (*Id.*).

Plaintiff previously worked full-time as a welder but was laid off on the alleged onset date of disability, September 8, 2010.  (*PageID#* 67).  Thereafter, he attempted to work as a fork lift driver, but was "let go" after six days because "[t]hey found out that I had glaucoma and I was a risk . . . ."  (*PageID#* 68).

Plaintiff testified he has lower back pain caused by degenerative disk disease. (*PageID#* 68).  He has not had any back surgery but has undergone physical therapy, which helped "[a] little bit, not much."  (*PageID##* 68-69).  Plaintiff testified he does not take pain medication for his back, but does take it for his left knee.  (*PageID#* 69).  He stated his knee, "needs replaced, the whole, whole knee."  (*Id.*).  He wears a brace on it, and stated his doctor "wants to do knee surgery but he wants to wait a couple years.  He says I'm too young, if I get it now then I'm just going to have to get it two or three more times."  (*PageID#* 70).  Plaintiff also has glaucoma in both eyes, and had cataract surgery. (*PageID##* 70-71).

As to psychological or emotional problems, Plaintiff testified he has "anxiety real bad, post-traumatic stress disorder."  (*PageID#* 72).  He stated, "I can't be around people for very long at a time, I can't even go to church no more.  And now it's getting so bad I have to hide from my grandkids when they start laughing and having fun because I just want to holler at them and they're not doing nothing wrong."  (*Id.*).  He stated he has anxiety or panic attacks approximately five or six times per week and they are triggered by "[n]oise, noise, just having a conversation I don't agree with or whatever and I just snap, I just snap."  (*PageID#* 73).  Plaintiff testified he has been in counseling with a

3

psychiatrist since October 2011. (*PageID#* 73). He testified he goes once every two months, but "I need to go more." (*PageID#* 74). Plaintiff stated he is supposed to see the psychiatrist for an hour each time, but "he like hurries me out and gets rid of me in about 15 minutes." (*Id.*). According to Plaintiff, the psychiatrist "really doesn't do anything, just see[s] how the medicines working and that's it." (*Id.*).

Plaintiff estimated he could only walk across the street, because his left leg "starts giving out then it'll like lock up." (*PageID#* 79). He believes he can only stand for 15 minutes at a time and sit for "an hour at most," due to leg and back pain. (*Id.*). He can use his arms, hands, and fingers, but estimates he can only lift 8 pounds. (*PageID##* 79-80). Plaintiff stated he is unable to climb stairs due to his leg and knee. (*Id.*).

Plaintiff testified he is able to use the microwave and can do the dishes if he "can take my time." (*PageID#* 81). He testified he does not sweep, mop, vacuum, wash clothes, go shopping, visit friends or relatives, go to the movies, exercise, do yard work, drink alcohol, or use drugs. (*PageID##* 81-84). He smokes a pack of cigarettes each day, and is able to feed, dress, and groom himself. (*PageID#* 85).

As to a typical day, Plaintiff testified he wakes up around 8:00 a.m., sits in a recliner chair, and watches television for most of the morning. (*PageID##* 85-86). He sometimes falls asleep in the recliner. (*PageID#* 86). As to the afternoon, Plaintiff testified he does "pretty much, nothing." (*Id.*).

  **B.** **Medical Evidence**

The administrative record contains many medical records plus opinions from Plaintiff's treating and non-treating medical sources. A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because both the ALJ and Plaintiff's counsel have accurately summarized the relevant records concerning Plaintiff's physical and mental impairments with citations to specific evidence. The Commissioner likewise defers to the ALJ's factual recitation.

## III. Administrative Review

### A. "Disability" Defined

The Social Security Administration provides DIB to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D). The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity. *See* 42 U.S.C. § 423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70. A DIB applicant bears the ultimate burden of establishing that he or she is under a "disability." *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

### B. Social Security Regulations

Administrative regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See PageID##* 44-45; *see also* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. 404, Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

    **C.**    **ALJ McNichols' Decision**

At Step 1 of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 8, 2010, the alleged onset date. (*PageID#* 45).

At Step 2 of the sequential evaluation, the ALJ concluded that Plaintiff has the following severe impairments: intermittent low back pain; chronic left knee pain; obesity; dysthymic disorder; and social phobia. (*Id.*).

The ALJ concluded at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the Listings, including sections 1.02, 1.04, 12.04, and 12.06. (*PageID#* 50).

At Step 4, the ALJ evaluated Plaintiff's RFC and found the following:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) subject to the following limitations: no climbing ropes, ladders, or scaffolds; the opportunity to alternate between sitting and standing positions at 30-minute intervals; occasional work above shoulder level on the right; no repetitive use of foot controls on the left; low stress jobs (no production quotas and no over-the-shoulder supervision); simple, 1- or 2-step tasks (requiring little, if any, concentration); no direct dealing with the general public; limited contact with co-workers and supervisors; and no teamwork.

(*PageID##* 51-54). The ALJ further determined that Plaintiff's statements concerning his impairments and their impact on his ability to work are inconsistent with the record as a whole and not entirely credible. (*PageID#* 54). The ALJ found Plaintiff could not perform his past relevant work as a store laborer, forklift operator, or welder. (*PageID#* 54). At Step 5, the ALJ concluded that based on the testimony of the VE – and considering Plaintiffs's age, education, work experience, and RFC – Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, such as the occupations of electronics worker, warehouse checker,

laundry folder, copy machine operator, lense inserter, charge account clerk, and weight tester.  (*PageID#* 55).

This assessment, along with the ALJ's findings throughout his sequential evaluation, led him to ultimately conclude that Plaintiff was not under a disability and therefore not eligible for DIB.  (*PageID#* 56).

**IV.**     **<u>Judicial Review</u>**

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . ." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal

criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

V. **Discussion**

    A. **Plaintiff's Contentions**

Plaintiff sets forth the following assignments of error: (1) The ALJ fails to meaningfully consider Plaintiff's carpal tunnel syndrome; (2) the ALJ's conclusion that Plaintiff can sustain light exertion work is unreasonable and unsupported; (3) the ALJ's appraisal of Plaintiff's social restrictions is too non-specific; and (4) the ALJ's decision is not supported by substantial evidence and the Commissioner's position is not substantially justified. (Doc. #10, *PageID#* 579).

    B. **Plaintiff's Carpal Tunnel Syndrome**

Plaintiff first contends the ALJ erred by entirely failing to discuss his bilateral carpal tunnel syndrome or the limitations occasioned thereby. (Doc. #10, *PageID#* 580).

At Step 2, the ALJ found Plaintiff to have the following severe impairments: intermittent low back pain; chronic left knee pain; obesity; dysthymic disorder; and social

9

phobia. (*PageID##* 45-46). The ALJ also considered Plaintiff's amblyopia and intermittent right shoulder pain, but did not consider such impairments to be "severe."

At Step 4, the ALJ determined that Plaintiff has the residual functional capacity to perform light work, subject to the following limitations:

> no climbing ropes, ladders, or scaffolds; the opportunity to alternate between sitting and standing positions at 30-minute intervals; occasional work above shoulder level on the right; no repetitive use of foot controls on the left; low stress jobs (no step productions quotas and no over-the-shoulder supervision); simple, 1- or 2-step tasks (requiring little, if any, concentration); no direct dealing with the general public; limited contact with co-workers and supervisors; and no teamwork.

(*PageID#* 51). The Commissioner does not dispute the ALJ failed to address Plaintiff's allegations of carpal tunnel syndrome, but rather contends that it "was not and has not been the focus of, or even a factor in, his disability claim." (Doc. #14, *PageID#* 605). According to the Commissioner, as no significant carpal tunnel treatment was documented, the "evidence contradicts Plaintiff's claims that he had a severe carpal tunnel impairment that would preclude work," and "medical documentation substantially supported the ALJ's decision." (*Id.*).

While the Commissioner is correct in noting that carpal tunnel syndrome was not a focal point of Plaintiff's disability claim, his primary care physician, Dr. Stephen E. Justice did, in fact, diagnose Plaintiff with carpal tunnel syndrome after examination indicated abnormal sensation, "in bilateral hands [consistent with] carpel tunnel." (*PageID#* 321, 323). Moreover, the ALJ specifically mentioned Dr. Justice's carpel tunnel syndrome diagnosis and discussed this impairment with Plaintiff at the administrative hearing as follows:

10

| | |
|---|---|
| ALJ: | One of your doctors, Dr. – Dr. Justice diagnosed you with carpal tunnel syndrome, are you having any problems using your hands? |
| Plaintiff: | Yeah, I used to be able to work on cars and stuff but now when I try to do something like that my hands just draws up, I can't even play ball with the kids or anything. |
| ALJ: | What do you mean that your hands draw up? |
| Plaintiff: | They go like this. |
| ALJ: | Like up into a claw or a ball? |
| Plaintiff: | Yeah. |
| ALJ: | Do you have pain in your hands when you use them? |
| Plaintiff: | Oh yeah, it feels like they're cramping up real, real bad and I can't, I can't even straighten them myself. |
| ALJ: | How often does that happen? |
| Plaintiff: | Well it happens every time I use my hands, I don't even like to do the dishes because I end up dropping and breaking the glasses. |
| ALJ: | Will other things besides the dishes make your hands feel like that? |
| Plaintiff: | Yeah, when I brush my teeth. |
| ALJ: | Anything else you can think of off the top of your head? |
| Plaintiff: | Helping my wife fold clothes. |

(*PageID##* 89-90). Although the mere failure of an ALJ to consider a claimant's medically determinable impairment as "severe," instead of "nonsevere," may be found to be "legally irrelevant," *see Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 190-91 (6th Cir. 2009), the same is not also true regarding an ALJ's total failure to consider an impairment. As it relates to Plaintiff's carpal tunnel syndrome, the ALJ did not simply

11

miscategorize the impairment as "nonsevere," instead of "severe," rather, he failed entirely to provide any indication that he actually considered this impairment at any step in the sequential analysis. *Simpson* explains the regulatory basis for this error:

> Pursuant to 20 C.F.R. §[ ] 404.1523 . . . : "In determining whether your physical or mental impairment or impairments are of a sufficient medical severity . . . we will consider the combined effect of all your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process."
>
> Pursuant to 20 C.F.R. §[ ] 404.1545(a)(2) . . . : "If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."

*See Simpson*, 344 Fed. Appx. at 190, n. 1. Certainly an ALJ is not required to discuss every piece of evidence submitted, but an ALJ is required to consider all of a claimant's medically determinable impairments. *See* 20 C.F.R. § 404.1545(a)(2). The ALJ's failure to consider Plaintiff's carpal tunnel syndrome in this case is particularly troublesome given the fact he was clearly aware of it: he not only noted Dr. Justice's diagnosis at the administrative hearing, but elicited testimony from Plaintiff regarding its limitations. (*PageID##* 89-90).

Although the Commissioner contends the jobs identified by the vocational expert would accommodate any limitation in Plaintiff's fingering and handling (as some occupations listed by the vocational expert require only frequent handling and occasional fingering), Doc. #14, *PageID##* 606-607, the Court will not speculate as to what

additional limitations the ALJ would have included in his RFC, if any, had he actually considered Plaintiff's carpal tunnel syndrome, including the impact of any resulting pain. In light of the fact the ALJ's decision lacks any indication he considered Plaintiff's carpal tunnel syndrome and accounted for any limitations from it in his RFC, the Court likewise declines to conclude through mere guesswork that the same jobs identified by the vocational expert would remain available even with additional limitations the Commissioner suggests would purportedly account for all such limitations that may be attributable to Plaintiff's carpal tunnel syndrome.

Accordingly, while it remains possible the ALJ may reach the same conclusion even after considering Plaintiff's carpal tunnel syndrome, his failure to do so in this case at any point during his sequential analysis constitutes reversible error.

For the above reasons, Plaintiff's statement of errors is well taken.[2]

## VI. <u>Remand is Warranted</u>

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined

---

[2] In light of the above review, and the resulting need for remand of this case, an in-depth analysis of Plaintiff's remaining contentions is unwarranted.

effect of impairments, or failed to make a credibility finding. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176.

Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of § 405(g), due to the problems identified above. On remand, the ALJ should be directed to: (1) re-evaluate the medical source opinions of record under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; and (2) determine anew whether Plaintiff was under a disability and thus eligible for DIB during the period in question.

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Charles Cox was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Report; and

    4.       The case be terminated on the docket of this Court.

February 10, 2015

                                                                       s/Sharon L. Ovington
                                                                          Sharon L. Ovington
                                                               Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).